# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

GOR AYVAZYAN,

          Petitioner,

     v.

FERETI SEMAIA et al.,

          Respondents.

Case No. 5:26-cv-02419-MAR

**MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE**

## I.

## INTRODUCTION

On May 6, 2026, Petitioner Gor Ayvazyan ("Petitioner"), an immigration detainee, filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 (the "Petition"), challenging his re-detention in immigration custody. Dkt. 1 ("Pet."). On May 14, 2026, Respondents filed an Answer to the Petition. Dkt. 8, ("Answer"). On May 18, 2026, Petitioner filed a Reply. Dkt. 9, ("Reply"). On June 4, 2026, Petitioner filed a Notice of Supplemental Evidence in support of Petition. Dkt. 10. The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes. Dkt. 6. **For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to immediately release Petitioner from custody**

**on Petitioner's prior conditions of release.**

## II.

## FACTUAL BACKGROUND[1]

Petitioner is a native and citizen of Armenia who entered the United States on December 4, 2024.  Pet. at 2.  Petitioner entered at or near a Port of Entry and was detained for approximately one month and ten days before being released from custody on January 7, 2025.  Id.  Following his release, Petitioner was placed on an ankle monitor for approximately one week and then was transitioned to telephonic reporting through a mobile application.  Id.  For nearly a year, Petitioner remained in the community.  Id. Petitioner has not missed an Immigration and Custody Enforcement ("ICE") appointment and has no criminal convictions.  On April 24, 2026, Petitioner was arrested for violation of California Penal Code 243(D); however, no charges have been brought against Petitioner.  See Answer at 3; Dkt. 10.   On May 1, 2026, Petitioner was detained by ICE "without warning, without a hearing, and without any individualized determination that detention was necessary."  Pet. at 2.

## III.

## SUMMARY OF PETITIONER'S CLAIMS

Petitioner's first claim for relief is that his detention violates 28 U.S.C. § 2241 because his detention is not justified by any legitimate purpose and because detention based solely on an unproven arrest is constitutionally impermissible.  Pet. at 7. Petitioner's second claim is that his detention without a pre-deprivation hearing violates his Fifth Amendment right to due process.  Id.  Petitioner's third claim is that his detention is arbitrary and excessive, and that no legitimate purpose supports his

---

1 The Court sets forth a summary of the relevant factual background based on the facts alleged in the Petition and the exhibits attached.  Respondents had the opportunity to dispute these facts or provide additional facts but declined to do so unless noted herein.  Dkt. 8.  Therefore, the Court considers the following facts to be undisputed and conceded for purposes of ruling on the Petition.  See C.D. Cal. L.R. 7-12; Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true)

continued detention, which violates his right to due process.  Id. at 7–8.  Petitioner's fourth claim for relief is that, pursuant to 28 U.S.C. § 1651, this Court has authority to prevent Petitioner's transfer and his continued detention.  Id. at 8.

Petitioner seeks immediate release from custody on the same conditions of supervision as prior to his arrest.  Pet. at 8.  Petitioner further seeks an order enjoining Respondents from re-detaining him without due process and prohibiting his transfer without notice.  Id.

In their Answer, Respondents argue that Petitioner is subject to mandatory detention based on his arrest and that his detention is authorized because he is in removal proceedings and his detention is not yet prolonged.  Answer at 4.

## IV.

## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law.  See U.S. Const., amend. V.  There is no question that these protections extend to noncitizens present in the United States.  See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)).  Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ."  Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation."  Zinermon v. Burch, 494 U.S. 113, 127 (1990).  Indeed, the Due Process Clause provides both procedural and substantive protections.  See, e.g., Regino v. Staley, 133

3

F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)).  To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976).  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)).  Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights."  Regino, 133 F.4th at 959-60.  Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest."  Reno v. Flores, 507 U.S. 292, 302 (1993).  By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests."  Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted).  To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest."  Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted).  With that careful description in mind,

courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

**V.**

**ANALYSIS**

### 1. Due process requires a pre-deprivation hearing

It is undisputed that Petitioner entered the United States in 2024. Pet. at 2. It is further undisputed that Petitioner was detained and then released from custody on bond.[2] Id.; Answer at 3. Thus, the Court concludes that once Petitioner was released from custody, he acquired "a protected liberty interest in remaining out of custody." Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases); Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("The Supreme Court has recognized this protected liberty interest even though the released individual is subject to extensive conditions of release, like reporting regularly to a parole officer, not using alcohol, and not traveling out of the country."). Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Pinchi, 792 F.Supp.3d at 1032 (internal quotation marks, brackets, and ellipses omitted). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

Petitioner's liberty interest in remaining out of custody is strengthened by the time he spent out of custody building a life for himself in the United States. See, e.g.,

---

2 The fact that Petitioner was released from custody necessarily means that Petitioner demonstrated to the satisfaction of immigration officials that Petitioner's release would not pose a danger to property or persons and that he was likely to appear for any future proceeding. See Fernandez Lopez v. Wofford, 2025 WL 2959319, at *2 (E.D. Cal. Oct. 17, 2025).

5

Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty.").

It is also undisputed that Petitioner was arrested by immigration authorities on May 1, 2026, without prior notice or a pre-deprivation hearing. Pet. at 2. It appears clear that petitioner has not been afforded any opportunity to contest the lawfulness of his detention. S.E. v. Noem, No. 1:26-CV-00356-DAD-SCR, 2026 WL 206085, at *3 (E.D. Cal. Jan. 27, 2026). Because the government contends that Petitioner is subject to mandatory detention, Petitioner's only available process is through a habeas petition. E.C., 2025 WL 2916264, at *10 (citing Sola v. Holder, 720 F.3d 1134, 1135 (9th Cir. 2013)). Further, Petitioner will likely not be provided process through the criminal system to contest the basis for his arrest because charges have not been filed against him. See Dkt. 10. Therefore, the risk of erroneous deprivation of petitioner's liberty is high under such circumstances. Doe, 800 F. Supp. 3d at 216–17; see also Brandon Y.M., v. Andrews, No. 1:25-cv-01962-SKO (HC), 2026 WL 125234, at *3 (E.D. Cal. Jan. 16, 2026) ("The Court further finds serious constitutional concerns would be presented if the LRA encompassed Petitioner's arrest and subsequent release without the filing of a formal accusatory pleading.").

Respondents contend that Petitioner's arrest for battery resulting in serious bodily injury to another under Cal. Penal Code § 243(d) qualifies under the LRA and subjects Petitioner to mandatory detention under § 1226(c). Answer at 3. The LRA expanded § 1226(c) to include aliens who are inadmissible under § 1182(a)(i)(6)(A), such as Petitioner, and who have been "charged with, [] arrested for…any crime that results in death or serious bodily injury to another person." See § 1226(c)(1)(E)). However, several courts have noted "serious constitutional concerns" regarding

6

mandatory detention for petitioners who have merely been arrested for a crime. See id. (citing Doe v. Moniz, 800 F.Supp.3d 203, 216 (D. Mass. Sept. 5, 2025)). Although Petitioner was arrested, no complaint or accusatory pleading has been filed. Dkt. 10. Furthermore, under California law, when an individual is arrested but released with no filed accusatory pleading, "the arrest shall not be deemed an arrest, but a detention only." Cal. Penal Code § 849.5. Thus, Petitioner's detention does not appear to qualify under § 1226(c)(1)(E)). Brandon Y.M., v. Andrews, No. 1:25-cv-01962-SKO (HC), 2026 WL 125234, at *3 (E.D. Cal. Jan. 16, 2026) (finding arrest for violation of Cal. Penal Code § 243(d) where no charging documents were filed did not subject Petitioner to mandatory detention). "[T]he risk of an erroneous deprivation [of liberty] is high" without a hearing because neither the government nor Petitioner had an opportunity to determine whether there was any valid basis for his detention. Pinchi, 792 F. Supp. 3d at 1035 (citing Singh v. Andrews, No. 1:25-CV-00801, 2025 WL 1918679 (E.D. Cal. July 11, 2025) (cleaned up)).

The government's interest in detaining Petitioners without notice and a pre-deprivation hearing is low. See Pinchi, 792 F. Supp. 3d at 1036 ("[T]he government has articulated no legitimate interest that would support arresting [petitioner] without a pre-detention hearing."). "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." Hernandez, 872 F.3d at 994. Additionally, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]" Sun v. Santacruz, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (quoting Doe v. Becerra, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). "In immigration court, custody hearings are routine . . . ." Singh v. Andrews, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025). There is no indication that providing proper notice and a pre-deprivation hearing would be fiscally or administratively burdensome on the

government.  See Garcia, 2026 WL 194745, at *3.

The Court concludes that Petitioner's detention by immigration authorities on May 1, 2026, without notice or a pre-deprivation hearing, violated his procedural due process rights.  See, e.g., Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); Fernandez Lopez v. Wofford, 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."); Zinermon, 494 U.S. 113, 127 ("Generally, the Due Process Clause 'requires some kind of a hearing before the State deprives a person of liberty or property.'").

The fact that Petitioner could receive a post-deprivation hearing does not remedy the violation of Petitioner's procedural due process rights.  See, e.g., Sachin Sachin v. Warden of the Desert View Facility, et al., No. 5:26-cv-00707-MWC-ADS, 2026 WL 855741 (C.D. Cal. Feb. 21, 2026) (C.D. Cal. Feb. 21, 2026) ("a bond hearing constitutes post-deprivation relief, which has no bearing on whether Respondents provided the requisite pre-deprivation relief."); E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); Domingo v. Kaiser, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention.").  Indeed, "an increasing wave of district courts have concluded[] [that] a post-hoc bond hearing cannot support [a] [p]etitioner's continued detention when the underlying arrest, revocation of parole, and re-detention were in violation of [the] [p]etitioner's due process rights and, thus, invalid."  Orellana, Rivera v. J. Johnson,

2026 WL 1390433, at *1 & n.2 (C.D. Cal. May 14, 2026) (citing Mumaev v. Semaia, 2026 WL 530765, at *6 (C.D. Cal. Feb. 20, 2026); Charaf v. Rios, 2026 WL 1270754, at *1 (C.D. Cal. May 5, 2026); Morales, 2026 WL 1026234; Osmel v. D. Marin, 2026 WL 1209477, at *3 (C.D. Cal. Apr. 29, 2026); Singh v. Janecka, 2026 U.S. Dist. LEXIS 95798, at *16–17 (C.D. Cal. Apr. 29, 2026)).  Thus, the Court concludes a bond hearing is insufficient to remedy the violation of Petitioner's due process rights in this case.

Given this violation of Petitioner's due process rights, the Court further concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025).  The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted).  The last uncontested status here is Petitioner's release from custody on his prior OROR.  See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention.").  "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview ex post facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained.  See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)).  Specifically, the Court concludes that Respondents must show by clear and convincing

9

evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community."). Thus, the Court concludes that the Petition must be granted with the foregoing prospective injunctive relief.

The Court notes that it will entertain an application by Petitioner requesting an award of reasonable attorney's fees and costs under the Equal Access to Justice Act ("EAJA") that is filed within 30 days of entry of final judgment in this action. See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action.").

## VI.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** the Petition as follows. Respondents shall immediately release Petitioner **Gor Ayvazyan (A# unknown)** from custody on his prior OROR. Respondents shall also immediately return any confiscated property and documents to Petitioner upon release. When Petitioner is not yet subject to a final order of removal, Respondents shall not re-detain Petitioner without providing at least seven (7) days' notice and a pre-deprivation bond hearing. The pre-deprivation bond hearing shall occur before an Immigration Judge at which

the Government bears the burden of proof to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community.  The Immigration Judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the forgoing standard.  Respondents shall file a notice of compliance no later than **three days from entry of Judgment**.

IT IS SO ORDERED.

DATED:  June 25, 2026

_____
HON. MARGO A. ROCCONI
UNITED STATES MAGISTRATE JUDGE

11